UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSHUA LOOKINGBILL, | : | CIVIL NO: 4:13-CV-01636 |
| Plaintiff | : | |
| | : | (Judge Brann) |
| v. | : | |
| | : | (Magistrate Judge Schwab) |
| ANTHONY FETROW, *et al.*, | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

**I. Introduction.**

After screening the amended complaint in this prisoner case in accordance with 28 U.S.C. § 1915A, we conclude that one of the three defendants is entitled to judicial immunity and that the amended complaint fails to state a claim upon which relief may be granted against another of the defendants. Thus, we recommend that the Court dismiss the claims against those two defendants and remand the case to the undersigned for further proceedings as to the third defendant.

**II. Factual Background and Procedural History.**

The plaintiff, Joshua Lookingbill, is a prisoner, who filed a civil rights complaint under 42 U.S.C. § 1983 along with an application to proceed *in forma pauperis*. We granted Lookingbill's application to proceed *in forma pauperis,* but after screening the complaint, we determined that the complaint failed to state a

claim upon which relief may be granted. We granted Lookingbill leave to file an amended complaint, which he did. The amended complaint names the following three defendants: (1) Anthony Fetrow, a detective with the York City Police Department; (2) Richard E. Martin II, a York County Magisterial District Judge; and (3) Bruce Blocher, the Chief Public Defender for York County.

According to Lookingbill, on January 31, 2013, around 10:25 a.m., Detective Fetrow arrested him at his place of employment, in a private secured office, without a warrant and without probable cause. Lookingbill alleges that Fetrow then took his cell phone and personal possessions. Later that day, Lookingbill alleges, Judge Martin approved a criminal complaint and signed a search warrant for Lookingbill's residence. According to Lookingbill, Judge Martin waited to arraign him until after the search warrant had been returned, which was several hours after it had been issued. Lookingbill complains that this unnecessarily delayed his arraignment. He alleges that a couple of weeks later, Blocher advised him to waive his preliminary hearing. He also alleges that Blocher violated the Rules of Professional Responsibility by giving confidential information to the prosecution. Lookingbill is seeking compensatory and punitive damages against all three defendants as well as injunctive relief against defendant Blocher.

2

By a separate order, we have ordered that the amended complaint be served on defendant Fetrow. For the following reasons, we recommend that the claims in the amended complaint against defendants Martin and Blocher be dismissed.

**III. Discussion.**

    **A. Screening of *Pro Se* Complaints—Standard of Review.**

This Court has a statutory obligation to conduct a preliminary review of a *pro se* complaint brought by a prisoner who seeks redress against government officials. Specifically, we are obliged to review the amended complaint pursuant to 28 U.S.C. § 1915A which provides, in pertinent part:

> **(a) Screening.**—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> **(b) Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
>     **(1)** is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>     **(2)** seeks monetary relief from a defendant who is immune from such relief.

Under Section 1915A, the court must assess whether a *pro se* complaint "fails to state a claim upon which relief may be granted." This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides

that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler,* 578 F.3d at 211. "A complaint has to 'show' such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir. 1994). A court, however, "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906

(3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010)(quoting *Iqbal,* 556 U.S. at 675 & 679).

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). Thus, a well-pleaded complaint must contain more

5

than mere legal labels and conclusions. Rather, a *pro se* complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

### B.   Judge Martin Is Entitled to Immunity from Lookingbill's Claims.

Lookingbill's claims against Judge Martin are based on Judge Martin's judicial decisions to approve a criminal complaint and issue a search warrant, as well as the timing of Lookingbill's arraignment.   Judge Martin is entitled to judicial immunity from Lookingbill's claims.

"Although § 1983 purports to subject '[e]very person' acting under color of state law to liability for depriving any other person in the United States of 'rights, privileges, or immunities secured by the Constitution and laws,' the Supreme Court has recognized that § 1983 was not meant to 'abolish wholesale all common-law immunities.'" *Yarris v. County of Delaware,* 465 F.3d 129, 134-35 (3d Cir. 2006) (quoting *Pierson v. Ray,* 386 U.S. 547, 554 (1967)).   There are two kinds of immunity under § 1983: qualified immunity and absolute immunity. *Id.* at 135. Although most public officials are entitled only to qualified immunity, public officials who perform "special functions" are entitled to absolute immunity. *Id.*

(quoting *Butz v. Economou,* 438 U.S. 478, 508 (1978)). "[A]bsolute immunity attaches to those who perform functions integral to the judicial process." *Williams v. Consovoy*, 453 F.3d 173, 178 (3d Cir. 2006). "This immunity was and still is considered necessary 'to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation.'" *McArdle v. Tronetti,* 961 F.2d 1083, 1084 (3d Cir. 1992) (quoting *Butz,* 438 U.S. at 512).

A functional approach is used to determine whether absolute or qualified immunity applies. *Forrester v. White,* 484 U.S. 219, 224 (1988). The inquiry focuses on the nature of the function performed, not the identity of the actor who performed it. *Id.* "The Supreme Court long has recognized that judges are immune from suit under section 1983 for monetary damages arising from their judicial acts." *Gallas v. Supreme Court of Pennsylvania*, 211 F.3d 760, 768 (3d. 2000). The Court has described the reasons for recognizing judicial immunity as follows:

> [T]he nature of the adjudicative function requires a judge frequently to disappoint some of the most intense and ungovernable desires that people can have.... [T]his is the principal characteristic that adjudication has in common with legislation and with criminal prosecution, which are the two other areas in which absolute immunity has most generously been provided. If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits. The resulting timidity would be hard to detect or control,

7

> and it would manifestly detract from independent and impartial adjudication.

*Forrester*, 484 U.S. at 226-27(citations omitted).

We engage in a two-part inquiry to determine whether judicial immunity is applicable. *Gallas,* 211 F.3d at 768. First, because immunity only applies to actions taken in a judge's judicial capacity, we must determine whether the challenged actions of the judge were taken in his or her judicial capacity *Id.* The relevant factors "relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity.'" *Id.* at 768 (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)). "Our task is to 'draw the line between truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges,' such as administrative acts." *Id.* (quoting *Forrester,* 484 U.S. at 227).

"Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* In this regard, "we must distinguish between acts in the 'clear absence of all jurisdiction,' which do not enjoy the protection of absolute immunity, and acts that are merely in 'excess of jurisdiction,' which do enjoy that protection." *Id.* at 769 (quoting *Stump*, 435 U.S. at 356 n.6). Judicial immunity shields a judge from liability for judicial acts even if those acts were taken in error, if they were done maliciously, if they were in excess of the

judge's authority, if the judge committed grave procedural errors, or if the judge's actions were unfair or controversial. *Id.* at 769. A judge will be subject to liability only when he or she has acted in the clear absence of all jurisdiction. *Id.* "In sum, our analysis must focus on the general nature of the challenged action, without inquiry into such "specifics" as the judge's motive or the correctness of his or her decision." *Id.*

With respect to judicial immunity, there is no distinction between courts of limited jurisdiction and courts of general jurisdiction, *Figueroa v. Blackburn,* 208 F.3d 435, 411 (3d Cir. 2000), and the doctrine of judicial immunity applies equally judges of courts of limited jurisdiction, such as magisterial district judges, as to judges of courts of general jurisdiction, *Martin v. Bicking,* 30 F.Supp.2d 511, 512 (E.D.Pa. 1998). Moreover, judicial immunity specifically applies to judicial actions ruling on bail requests, making probable cause determinations, and presiding over preliminary hearings in state criminal cases. *See Pokrandt v. Shields,* 773 F.Supp. 758, 764 (E.D.Pa. 1991); *Fox v. Castle,* 441 F.Supp. 411, 413 (M.D.Pa. 1977).

From the allegations in the amended complaint, it is clear that Judge Martin was acting in a judicial capacity in his dealings with Lookingbill and that he was not acting in the complete absence of jurisdiction. Judge Martin was acting in his

capacity as a magisterial district judge, and he was engaging in the types of actions that a magisterial district judge routinely takes in criminal cases. Accordingly, Judge Martin is entitled to judicial immunity from Lookingbill's claims.

### C. The Amended Complaint Fails to State a Claim Against Defendant Blocher Upon Which Relief May Be Granted.

Lookingbill raises claims against Blocher for advising him to waive his preliminary hearing and for violating the Rules of Professional Conduct in his representation of Lookingbill.

Lookingbill's claims are brought under 42 U.S.C. § 1983. "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor School Dist.*, 422 F.3d 141, 146 (3d Cir. 2005). Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." *Id.* To establish a claim under § 1983, the plaintiff must establish a deprivation of a federally protected right and that this deprivation was committed by a person acting under color of state law. *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005). The requirement that a defendant act under color of state

law is essential in order to establish a claim under § 1983. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

"Action under color of state law 'requires that one liable under § 1983 have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Harvey v. Plains Twp. Police Dept.*, 635 F.3d 606, 609 (3d Cir. 2011)(quoting *Abbott v. Latshaw,* 164 F.3d 141, 146 (3d Cir.1998)). The Supreme Court has established a number of approaches to the question of when a private person acts under color of state law. *Crissman v. Dover Downs Entertainment, Inc.*, 289 F.3d 231, 239 (3d Cir. 2002). The United States Court of Appeals for the Third Circuit has "outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) "whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state"; (2) "whether the private party has acted with the help of or in concert with state officials"; and (3) whether "the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009)(quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir.1995)). "The inquiry is fact-specific," *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995), and "state action may be found if, though only if,

there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Academy v. Tennessee Secondary School Athletic Assoc.,* 531 U.S. 288, 295 (2001)(quoting *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351 (1974)).

With respect to the color-of-state-law requirement, the conduct of a defense attorney representing a client in a criminal case does not by itself rise to the level of state action entitling a state prisoner to bring a federal civil-rights action- against his own prior counsel. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981)(holding that a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding). Therefore, Blocher was not acting under color of state law in his representation of Lookingbill, and Lookingbill may not convert his dissatisfaction with Blocher's representation into a federal civil-rights lawsuit.   Because Blocher was not acting under color of state law in his representation of Lookingbill, the amended complaint fails to state a claim upon which relief may be granted against Blocher.

### D.  Lookingbill Should Not Be Granted Further Leave to Amend.

Before dismissing a complaint for failure to state a claim upon which relief may be granted under the screening provisions of 28 U.S.C. § 1915A, the court must

grant the plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 114 (3d Cir. 2002). In light of this requirement, after screening the original complaint, we granted Lookingbill leave to file an amended complaint. He filed an amended complaint that fails to state a claim upon which relief may be granted against defendant Blocher and that seeks relief against defendant Martin, who is entitled to judicial immunity. Further, leave to amend would be futile.

**IV. Recommendations.**

Accordingly, for the foregoing reasons, it is recommended that the claims against defendant Martin and defendant Blocher be dismissed and that the case be remanded to the undersigned for further proceedings on the claims against defendant Fetrow.

Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall

make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 22nd day of April, 2014.

S/Susan E. Schwab
Susan E. Schwab
United States Magistrate Judge
