UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSHUA LOOKINGBILL, | : | 4:13-CV-01636 |
| Plaintiff | : | (Judge Brann) |
| v. | : | (Magistrate Judge Schwab) |
| ANTHONY FETROW, | : | |
| Defendant | : | |

# REPORT AND RECOMMENDATION

## I. Introduction.

In 2014, the plaintiff, Joshua Lookingbill, was convicted of murder and other charges in the Court of Common Pleas of York County, Pennsylvania, and he was sentenced to life imprisonment. Before his conviction, he filed this case claiming, among other things, that he was arrested without probable cause and without a warrant. There is only one defendant remaining, and that defendant filed a motion to dismiss the amended complaint. Despite being repeatedly ordered to do so, Lookingbill has not filed a brief in opposition to the motion to dismiss. After analyzing the applicable factors, we conclude the case should be dismissed based on Lookingbill's failure to prosecute this action. In the alternative, we recommend that the defendant's motion to dismiss the amended complaint be granted.

## II. Background and Procedural History.

Lookingbill is a prisoner, who filed a civil rights complaint under 42 U.S.C. § 1983 along with an application to proceed *in forma pauperis*. We granted Lookingbill's application to proceed *in forma pauperis,* but after screening the complaint, we determined that the complaint failed to state a claim upon which relief may be granted. We granted Lookingbill leave to file an amended complaint, which he did. The amended complaint named the following three defendants: (1) Anthony Fetrow, a detective with the York City Police Department; (2) Richard E. Martin II, a York County Magisterial District Judge; and (3) Bruce Blocher, the Chief Public Defender for York County.

According to Lookingbill, on January 31, 2013, around 10:25 a.m., Detective Fetrow arrested him at his place of employment, in a private secured office, without a warrant and without probable cause. Lookingbill alleges that Fetrow then took his cell phone and personal possessions. Later that day, Lookingbill alleges, Judge Martin approved a criminal complaint and signed a search warrant for Lookingbill's residence. According to Lookingbill, Judge Martin waited to arraign him until after the search warrant had been returned, which was several hours after it had been issued. Lookingbill complains that this unnecessarily delayed his arraignment.

2

He alleges that a couple of weeks later, Blocher advised him to waive his preliminary hearing. He also alleges that Blocher violated the Rules of Professional Responsibility by giving confidential information to the prosecution. Lookingbill sought compensatory and punitive damages against all three defendants as well as injunctive relief against defendant Blocher.

The Court dismissed all claims against Martin and Blocher. Thus, the only remaining defendant is Detective Fetrow, who, Lookingbill alleges, arrested him without probable cause and without a warrant. Lookingbill asserts claims against Fetrow under the Fourth Amendment, the Due Process Clause, and the Equal Protection Clause.

Fetrow filed a motion to dismiss the amended complaint, and we ordered Lookingbill to file a brief in opposition to that motion on or before December 29, 2014. Lookingbill, however, did not file a brief in opposition. After denying Lookingbill's motion for the appointment of counsel, we *sua sponte* granted Lookingbill an extension of time to January 13, 2015 to file a brief in opposition to the motion to dismiss. We also noted that if Lookingbill failed to file a brief in opposition, we may deem him to have abandoned this action. Lookingbill later requested and received an extension of time until February 27, 2015 to file his brief

in opposition. Still, he did not file a brief in opposition. Rather, he filed a document requesting that this case be stayed until the conclusion of his criminal proceedings. We denied Lookingbill's request for a stay because we thought we should determine whether the amended complaint states any claims upon with relief can be granted before considering whether to stay the case. We noted that it would be useless to stay a claim or claims that fail to state a claim upon which relief can be granted. Thus, we denied Lookingbill's request for a stay without prejudice to the Court considering, after the motion to dismiss is decided, whether a stay is appropriate. We gave Lookingbill one final opportunity to file a brief in opposition to the defendant's motion to dismiss the amended complaint. And we again warned him that if he failed to file a brief in opposition, we may deem him to have abandoned this action. Still, Lookingbill has not filed a brief opposition to the motion to dismiss.

## III. Discussion.

### A. Under the Rules of this Court, Lookingbill Should Be Deemed Not to Oppose the Motion to Dismiss.

At the outset, under the Local Rules of this Court, Lookingbill should be deemed not to oppose the pending motion to dismiss since he has failed to timely oppose that motion.

Local Rule 7.6 imposes an affirmative duty on a litigant to respond to motions and provides that "[a]ny party who fails to comply with this rule shall be deemed not to oppose such motion." At the time that he filed his complaint, Lookingbill received a copy of the Court's Standing Practice Order, which set forth his obligations with respect to responding to a motion. *Doc. 3-1* at 2.

In this case, Lookingbill has not complied with Local Rule 7.6 or this Court's orders to file a brief in opposition to the motion to dismiss. These procedural defaults compel us to consider:

> [A] basic truth: we must remain mindful of the fact that "the Federal Rules are meant to be applied in such a way as to promote justice. *See* Fed.R.Civ.P. 1. Often that will mean that courts should strive to resolve cases on their merits whenever possible. However, justice also requires that the merits of a particular dispute be placed before the court in a timely fashion. . . ."

*Lease v. Fishel,* 712 F.Supp.2d 359, 371 (M.D.Pa. 2010)(quoting *McCurdy v. American Bd. of Plastic Surgery,* 157 F.3d 191, 197 (3d Cir. 1998)).   With this basic truth in mind, we acknowledge a fundamental guiding tenet of our legal system.   A failure on our part to enforce compliance with the rules, and impose the sanctions mandated by those rules when the rules are repeatedly breached, "would actually violate the dual mandate which guides this court and motivates our system of justice: 'that courts should strive to resolve cases on their merits whenever possible [but that] justice also requires that the merits of a particular dispute be placed before the court in a timely fashion.'" *Id.*   Therefore, we are obliged to ensure that one party's refusal to comply with the rules does not lead to an unjustified prejudice to those parties who follow the rules.

Such basic principles of fairness apply here.   In this case, Lookingbill failed to comply with Local Rule 7.6; he failed to file a brief in opposition to the pending motion to dismiss after being ordered to do so a number of times and after being warned that his failure to file a brief in opposition may be construed as his abandoning this case.   These failures now compel us to deem Lookingbill to not oppose the pending motion to dismiss.

6

Nevertheless, Lookingbill's failure to file a brief in opposition alone is not sufficient for the court to dismiss the case. In *Stackhouse v. Mazurkiewicz*, 951 F.2d 29 (3d Cir. 1991), the Third Circuit reversed a district court's dismissal based on the *pro se* plaintiff's failure to file a brief in accordance with a local rule of court. The Third Circuit stated that failure to obey the local rule should not form the basis for dismissal without an analysis of the merits of the case. *Id.* at 30. It noted that dismissal was not to be ruled out if the party was represented by an attorney and in fact did not oppose the motion. *Id.* It also noted: "Nor do we suggest that if a party fails to comply with the rule after a specific direction to comply from the court, the rule cannot be invoked. Thus, our holding is not broad." *Id.* at 30.

Although this caveat from the *Stackhouse* case might suggest that we could grant the pending motion to dismiss based on Lookingbill's failure to file a brief in opposition after being ordered to do so by the Court, the Third Circuit has subsequently declined "to adopt an interpretation of *Stackhouse* under which a district court may dismiss a case solely because a plaintiff misses a briefing deadline set forth in a local rule or court-ordered briefing schedule." *Hernandez v. Palakovich,* 293 F.App'x 890, 895 (3d Cir. 2008). Rather, the Third Circuit has held that before dismissing a case as a sanction for failure to follow a court rule or

7

court order, a court must consider the factors set forth in the seminal *Poulis* case. *Id.* at 894 (citing *Poulis v. State Farm Fire and Casualty Co.,* 747 F.2d 863, 868 (3d Cir. 1984)); *see also Shuey v. Schwab,* 350 F.App'x 630, 633 (3d Cir. 2009)("*Poulis* has been cited too often and is too deeply ingrained in the jurisprudence of this court and the district courts of this circuit for a court to assume that a party's failure to respond to a motion to dismiss can be regarded as an abandonment of the claim. *Poulis* governs the District Court's decision to dismiss the Shuey's claim, and it was error to dismiss without first considering the *Poulis* factors."). Thus, we turn to a consideration of the *Poulis* factors.

### B. Consideration of the *Poulis* Factors Warrants Dismissal of this Case or in the Alternative, the Defendant's Motion to Dismiss Should Be Granted.

If the plaintiff fails to prosecute a case or to comply with court rules or court orders, pursuant to Fed.R.Civ.P. 41(b), the Court may dismiss the action. Even though dismissal is an available sanction, it is a drastic sanction that "should be reserved for those cases where there is a clear record of delay or contumacious conduct by the plaintiff." *Donnelly v. Johns-Manville Sales Corp.*, 677 F.2d 339, 342 (3d Cir. 1982). Decisions regarding dismissal of actions for failure to

prosecute rest in the sound discretion of the Court and will not be disturbed absent an abuse of that discretion. *Emerson v. Thiel College,* 296 F.3d 184, 190 (3d Cir. 2002). But that discretion, while broad, is governed by the following factors, commonly referred to as *Poulis* factors, which the Court must balance in deciding whether to dismiss a case:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

*Poulis,* 747 F.2d at 868.   No single factor is dispositive, *Briscoe v. Klaus,* 538 F.3d 252, 263 (3d Cir. 2008), and each factor need not be satisfied for the court to dismiss an action, *Ware v. Rodale Press, Inc.,* 322 F.3d 218, 221 (3d Cir. 2003).   In this case, an assessment of the *Poulis* factors weighs in favor of dismissing this action.

The first *Poulis* factor is the extent of the party's personal responsibility.   A *pro se* litigant is personally responsible for failure to comply with the Court's rules and orders.   In this case, Lookingbill is proceeding *pro se,* and so he is responsible for his failure to file a brief in opposition to the pending motion to dismiss, as required by the Local Rule and as ordered by the Court.   In sum, Lookingbill is

responsible for his failure to comply with the court rules and court orders, and he is also responsible for his failure to litigate this case.

The second *Poulis* factor is prejudice to the adversary. Examples of prejudice are "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." *Scarborough v. Eubanks*, 747 F.2d 871, 876 (3d Cir. 1984). Prejudice for purposes of the *Poulis* analysis, however, does not mean irremediable harm. *Ware,* 322 F.3d at 222. "[T]he burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy is sufficiently prejudicial." *Id.* In this case, Lookingbill's failure to litigate this case and comply with court rules and court orders frustrates and delays resolution of this action, and such failure to litigate can be seen to prejudice the defendant, who seeks a timely resolution of the case.

The third *Poulis* factor is a history of dilatoriness. While "conduct that occurs one or two times is insufficient to demonstrate a 'history of dilatoriness,'" *Briscoe,* 538 F.3d at 261, "[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders." *Adams v. Trs. of N.J. Brewery*

*Emps.' Pension Trust Fund*, 29 F.3d 863, 874 (3d Cir. 1994). A "party's problematic acts must be evaluated in light of [her] behavior over the life of the case." *Id.* at 875. In this case, Lookingbill has a history of dilatoriness. He failed to file a brief in opposition to the pending motion to dismiss after being order to do so. He again failed to file a brief in opposition to the motion to dismiss after we *sua sponte* granted him an extension of time to do so and despite the fact that we warned him that if he failed to file a brief in opposition, we may deem him to have abandoned this action. Then, he again failed to file a brief in opposition after we gave him one final opportunity to file his brief opposition, and we again warned him that we may deem him to have abandoned this action if he failed to file a brief in opposition. In sum, Lookingbill was given opportunity after opportunity to file a brief in opposition, but he still failed to do so.

The fourth *Poulis* factor is whether the conduct was willful or in bad faith. "Willfulness involves intentional or self-serving behavior." *Adams,* 29 F.3d at 875. Here, Lookingbill was repeatedly ordered to file a brief in opposition to the motion to dismiss, but he did not do so. Moreover, he was warned of the possible consequences of failing to file a brief in opposition. Lookingbill's repeated failure

to comply with the court's orders leads to an inference that he has willfully abandoned this case.

The fifth *Poulis* factor is the effectiveness of alternate sanctions. Dismissal is a sanction of last resort, and it is incumbent upon a court to explore the effectiveness of lesser sanctions before ordering dismissal. *Poulis,* 747 F.2d at 868. Lookingbill is proceeding *pro se* and *in forma pauperis*, and there is no evidence to support a reasonable inference that he would be able to pay monetary sanctions. Therefore, monetary sanctions, including attorney's fees and costs, would not be an effective sanction in this case. Moreover, Lookingbill's failure to comply with the Court's orders leads to an inference that further orders to him would not be effective. In this case, no sanction short of dismissal would be effective.

The sixth *Poulis* factor is the meritoriousness of the claim. In this inquiry, a claim will be deemed meritorious when the allegations of the complaint, if established at trial, would support recovery. *Poulis,* 747 F.2d at 870. The defendant has presented strong arguments for why the Court should dismiss the amended complaint.

Lookingbill alleges that Fetrow arrested him without a warrant and without probable cause. But Lookingbill's allegations in this regard are conclusory. As to

the warrant requirement, Lookingbill alleges that Fetrow arrested him in an office at his place of employment, which is located on private property. But Lookingbill does not allege facts from which a reasonable inference can be drawn that he had a reasonable expectation of privacy in the office of his employer. Nor does he allege that his employer had not given consent for Fetrow to enter the property.

As to the issue of probable cause, Lookingbill alleges the following:

> Alleged offense occurred at 4:30 a.m   the police questioned people concerning this offense my names was brought in to question but the information was not reliable   do to the fact they stated they knew   me but did not see anything making it a unclear suspicion.
> No determination of probable cause detective spoke with my father roger lookingbill he talked to detective fetrow over the on pone giving him by ware about at 8:45 am.
> A complaint   nor was a affidavit of probable cause filed till later that day   at 4:45 pm arrest took place at 10:25 am there was never a a determination made from a neutral and detached magistrate.

*Doc. 11* at 5 (errors in original).[1]   Although Lookingbill refers to information that others gave to the police and he concludes that such information was insufficient to establish probable cause, he does not allege what information was given to the

---

[1] Lookingbill's failure to adhere to basic rules of grammar, punctuation, and capitalization make his allegations difficult to follow.

13

police.  That information, however, is contained in Fetrow's affidavit of probable cause attached to the criminal complaint:

> 1/31/13 at 4:21AM, Olga Cuadra of 412 S. Pershing Ave., 2nd flr., called 911 when she awoke because her boyfriend Nakia Williams was moving around in their bed.  Williams sat up and told her to call the cops and an ambulance and then fell back in bed.  She noticed that the victim's body was all bloody.  Police and EMS personnel responded and Williams was pronounced dead from multiple stab wounds.  Olga's 7-yr. old son immediately came to her and advised that he had just seen the def. Joshua Lookingbill run downstairs from the area of the 2nd flr.  Lookingbill is the father of three of Olga's children.  Olga stated that Lookingbill had made prior threats to kill the victim.
>     I later spoke with Roger Lookingbill, the def.'s father, who stated that he picked the def. up at his residence at about 6:15 AM and took him to work.  The def. told his father that he was in a fight with a male.  He then called his father around 8AM from work asking if the police had called for him or if they were coming to his work to get him.  Roger told him no.

*Doc. 28-3* at 5.[2]

---

[2] When deciding a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  The Court may, however, also consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on that document. *Id.*  "A document forms the basis of a claim if the document is 'integral to or explicitly relied upon in the complaint.'" *Lum v. Bank of America,* 361 F.3d 217, 222 n.3 (3d Cir. 2004)(quoting *In re Burlington Coat Factory Sec. Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997)).  Here, Fetrow attached the criminal complaint to his motion to dismiss, and Lookingbill refers to the criminal complaint and affidavit of probable cause in his amended complaint.

The Fourth Amendment states, in pertinent part, that "[t]he right of the people to be secure in their persons … against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause…." U.S. CONST. Amend. IV.  "To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012).  "The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995).   An

---

Moreover, Lookingbill alleges that there was information given to the police about him before his arrest.  Under these circumstances, it is appropriate to consider the affidavit of probable cause to determine what information Fetrow had before the arrest.  In this regard, we note that Lookingbill does not allege that Fetrow lied in the affidavit of probable cause.  Rather, he merely alleges that the information available to Fetrow at the time did not establish probable cause for his arrest.

"officer may draw inferences based on his own experience in deciding whether probable cause exists." *Ornelas v. United States*, 517 U.S. 690, 700 (1996).

Here despite Lookingbill's suggestion otherwise, Fetrow had probable cause to arrest. The information available to Fetrow included a statement from the mother of Lookingbill's children that Lookingbill had threatened to kill the victim and that her son had told her immediately after the victim was stabbed that he saw Lookingbill run from the scene. This information is sufficient to provide Fetrow with probable cause to arrest Lookingbill. Thus, the amended complaint fails to state a false arrest claim upon which relief can be granted.

The amended complaint also fails to state an equal protection claim upon which relief can be granted since Lookingbill does not allege facts from which it can reasonably be inferred that he was treated differently than other similarly situated individuals, a necessary element of an equal protection claim. *See Hill v. Borough of Kutztown,* 455 F.3d 225, 239 (3d Cir. 2006); *Oliveira v. Twp. of Irvington,* 41 F. App'x 555, 559 (3d Cir. 2005).

Further, the amended complaint fails to state a due process claim upon which relief can be granted. To the extent the due process claim is based on Lookingbill's arrest, it is duplicative of his Fourth Amendment claim. And to the extent that the

16

due process claim is based on based on the confiscation of Lookingbill's property after his arrest, it fails because Lookingbill had an adequate post-deprivation remedy for the return of his property.   More specifically, Pa.R.Crim.P. 588 provides a procedure for the return of property seized during a criminal investigation, and courts "have consistently held" that the Rule "provides an adequate post-deprivation remedy." *Guarrasi v. Cnty. of Bucks*, No. CIV.A. 10-1879, 2011 WL 1226118, at *9 (E.D. Pa. Mar. 29, 2011); *see also McKenna v. Portman*, 538 F. App'x 221, 225 (3d Cir. 2013)("Pennsylvania Rule of Criminal Procedure 588 provides an adequate post-deprivation remedy when police seize property pursuant to an investigation."). Courts have also recognized that a state-law conversion or replevin case provides an adequate post-deprivation remedy in situations of seized property. *Stasko v. Lebanon Cnty. Drug Task Force*, No. 1:12-CV-1156, 2012 WL 6561726, at *9-10 (M.D. Pa. Dec. 17, 2012)("In short, if Plaintiff believes his vehicle is being improperly withheld pursuant to a seizure in connection with criminal proceedings, a motion for return of property pursuant to Rule 588 is adequate to cause the property to be returned.   Insofar as Plaintiff claims that Defendants' retention of his property is a "random and unauthorized act" separate and apart from the criminal investigation, Plaintiff is capable of filing a state law tort action in state court

17

seeking the return of his property."); *Olarte v. Cywinski*, No. 3:12-CV-632, 2012 WL 3757649, at *6 (M.D. Pa. Aug. 28, 2012)("We agree with defendant that Pennsylvania law provided plaintiff with adequate post-deprivation remedies. Courts have found that Pennsylvania law provides for such adequate remedies through replevin and conversion claims."). Given the availability of an adequate post-deprivation remedy in the form of either a Rule 588 motion or a replevin/conversion claim, Lookingbill's Fourteenth Amendment due process claim fails.[3]

In sum, the *Poulis* factors weigh in favor of dismissal. Lookingbill has repeatedly failed to comply with Court orders even after being warned of the possible consequences of doing so. Thus, we will recommend that the Court dismiss the case pursuant to Fed.R.Civ.P. 41(b) and the *Poulis* factors. In the alternative, for the reasons set forth above, it is recommend that the Court grant the pending motion to dismiss the amended complaint.

---

[3] Fetrow asserts additional reasons for dismissal of the amended complaint, but since we determine that the amended complaint fails to state a claim upon which relief can be granted for the above reasons, we need not address those arguments.

## IV. Recommendations.

Accordingly, for the foregoing reasons, it is recommended that the Court dismiss this action in accordance with Fed.R.Civ.P. 41(b) or, in the alternative, grant the motion (doc. 27) to dismiss the amended complaint.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive

further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 2nd day of June, 2015.

**_S/Susan E. Schwab_**
Susan E. Schwab
United States Magistrate Judge
